UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| TINA M. CESSNA BOCHARD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Cause No. 1:18-CV-221-HAB |
| ANDREW SAUL,<br>Commissioner of the Social<br>Security Administration[1], | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Tina M. Cessna Bochard's Brief in Support of Plaintiff's Complaint (ECF No. 15), filed on November 14, 2018. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (ECF No. 21) on February 6, 2019. Plaintiff filed her Reply Brief (ECF No. 22) on February 19, 2019. This matter is now ripe for review.

**A.    Procedural History**

Plaintiff applied for disability insurance benefits ("DIB") under Title II of the Social Security Act on August 7, 2015, alleging that she had been disabled since November 1, 2012. Plaintiff only met the insured status requirements of Title II of the Act through December 31, 2015. Therefore, the relevant period in this case is from November 1, 2012, through December 31, 2015.

Plaintiff's claim was denied initially and on reconsideration. On June 2, 2017, an Administrative Law Judge ("ALJ") held an administrative hearing at which testimony was taken

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

from Plaintiff and a vocational expert ("VE"). On September 6, 2017, the ALJ issued her Decision, finding that Plaintiff was not disabled. The Decision was affirmed by the Appeals Council. Plaintiff then filed her Complaint to Review Decision of the Commissioner of the Social Security Administration (ECF No. 1) on July 12, 2018.

**B.    Legal Analysis**

**1.    *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the

record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz,* 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate [her] assessment of the evidence to assure" the court that she "considered the important evidence" and to enable the court "to trace the path of her reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

2. *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 1, 2012, through December 31, 2015. At step two, the ALJ determined that Plaintiff had the following severe impairments: migraines/occipital neuralgia; status post-cervical fusion; discogenic and degenerative changes in the cervical and lumbar spine; partial tear of the right gluteus minimus tendon; fibromyalgia; and bilateral hearing loss. The ALJ further found that Plaintiff had the following non-severe impairments: hyperlipidemia; gout; thyroid nodules; carpal tunnel syndrome (status post-bilateral carpal tunnel release surgeries); trigger thumb and fingers on the right hand (status post-trigger thumb release); bilateral plantar fasciitis; allergies; vision problems; colon problems; low vitamin D levels; and depression/adjustment disorder with mixed anxiety and depression.

At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 18). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that she was not able to climb ladders, ropes, or scaffolds, and she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She also needed to avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas and she needed to avoid temperature extremes and more than moderate levels of noise (as defined by the DOT). She further required activities in which the instructions were communicated face-to-face or in writing.

At step five, the ALJ determined that Plaintiff could perform her past relevant work and therefore was not disabled.

3. *The RFC*

Plaintiff first claims that the ALJ failed to incorporate the limitations from her severe impairment of migraines/occipital neuralgia in both the RFC and the hypothetical to the VE. The Court agrees and finds that the ALJ's failure in this regard requires remand.

Both the hypothetical posed to the VE and the ALJ's RFC must incorporate all the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015, citing *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) and *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ determined that Plaintiff's migraines/occipital neuralgia were a severe impairment. (R. 17). Objective medical testing confirmed conditions that can cause migraines and other headaches, including:

- abnormalities of the optic nerve fluid sheath;
- a partially empty sella;
- mild flattening of both dural venous sinuses; and
- minor chronic small vessel ischemic/occlusive changes in the brain.

(R. 21). Plaintiff has also taken a virtual alphabet soup of medications to treat her migraines, including Fioricet, Zonegran, Bubalital, Cyclobenzaprine, Diclofenac, Prednisone, Morphine, Amitriptyline, Hydrocodone, Metaxalone, and Lyrica. (R. 22). Plaintiff also underwent spinal fusion surgery which, in part, was performed to reduce the frequency of her migraines. (R. 90). The Court agrees with the ALJ that, on the basis of this record, Plaintiff's migraines were a severe impairment.

The record also demonstrates that Plaintiff consistently reported the severity of her migraines during the insured period. Records from Fort Wayne Interventional Pain Management demonstrate that Plaintiff suffered from regular, severe migraines throughout 2013 and 2014 (R.

5

490, 496, 519, 546). Plaintiff reported her migraines on her Disability Report (R. 240) and followed up on her Function Report with additional information regarding the limitations caused by her migraines. (R. 284). The Court finds nothing in the records that would call Plaintiff's complaints into question.

Nonetheless, the ALJ found Plaintiff's complaints "not entirely consistent with the medical evidence and other evidence in the record." (R. 22). The ALJ first notes that Plaintiff stopped working because she got married, not because of her impairments. (*Id*.). Neither the ALJ nor the Commissioner identify how this fact is inconsistent with Plaintiff's claims regarding the intensity, persistence, and limiting effects of her migraines, and the Court cannot find any basis for concluding that it is. While it is true that a claimant with a good work history is entitled to "substantial credibility" when claiming an inability to work, *Stark v. Colvin*, 813 F.3d 684, 589 (7th Cir. 2016), it does not follow that Plaintiff is entitled to less credibility because she was not working at the time of the claimed onset of her disability.

The ALJ next noted that Plaintiff had waited almost three years to file her application for benefits. (R. 22). This is not a basis for disbelieving medically-supported complaints. As stated by the Seventh Circuit:

> It is fortunate rather than otherwise that not every person in the United States who might be eligible to feed at the public trough does so at the first opportunity. Many people are ignorant of the full range of available benefits, or reluctant to undergo arduous administrative proceedings in which they are called liars, until desperation resulting from a personal crisis…drives them to seek additional information or to overcome their reluctance to run the bureaucratic gauntlet.

*Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996).

The ALJ also found that Plaintiff's activities of daily living ("ADLs") "fail to support a more restrictive assessment." (R. 22). Aside from failing to recognize "the crucial differences between activities of daily living and activities of a full-time job," *Bjornson v. Astrue*, 671 F.3d

640, 647 (7th Cir. 2012), the ALJ's finding fails to recognize the nature of migraines. The ALJ's rationale is similar to that in *Moore v. Colvin*, 743 F.3d 1118 (7th Cir. 2014), in which the administrative law judge concluded that migraine headaches once or twice per week could not be disabling because the claimant "still has a significant amount of time during which she would not be incapacitated." *Id*. at 1126. The Seventh Circuit rejected this reasoning, finding that it "essentially ignores the inability to schedule the incapacitating migraines." *Id*. So it is here. Plaintiff may very well be able to perform any number of household activities when not suffering a migraine but, "absent a showing that she has a completely flexible work schedule…, the existence of symptom-free days adds nothing here." *Id*.

Finally, the ALJ notes that Plaintiff "did not seek emergency room treatment for headaches/migraines or occipital neuralgia during the period at issue." (R. 22). While this is true, an ALJ may not drawn any inferences about a claimant's condition from a lack of treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Here, there is no evidence that the ALJ made any attempt to determine why Plaintiff did not go to the ER for her headaches. Had she done so, the ALJ would have found that Plaintiff did not go to the ER "because she cannot afford to." (R. 284). In any event, given the long history of treatment Plaintiff received for her migraines, including but not limited to spinal fusion surgery, her failure to seek additional treatment at the ER demonstrates very little.

With Plaintiff's migraine-caused limitations amply demonstrated in the record, the ALJ had a duty to incorporate those limitations in both the RFC and the hypothetical to VE. She did neither. As Plaintiff notes, there is nothing in the RFC that explicitly addresses the limitations Plaintiff experienced as a result of her migraines, and the Commissioner does not identify any part

of the RFC that addresses those limitations. The ALJ compounded this error when her hypothetical to the VE was nothing more than the RFC. (R. 102). The ALJ's failure to properly consider and incorporate Plaintiff's medically-supported limitations arising from her migraines infected both the RFC and the VE's determination. Under these circumstances, remand is necessary.

**C.     Conclusion**

Given the Court's conclusion that the ALJ erred in formulating the RFC, it is unnecessary for the Court to consider Plaintiff's remaining arguments. For the foregoing reasons, the Court DIRECTS the Clerk to enter judgment in favor of Plaintiff and against Defendant, and REMANDS this matter back to the ALJ for further proceedings.

SO ORDERED on October 8, 2019.

 s/ Holly A. Brady  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT